UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RESOURCE RECOVERY SYSTEMS, LLC
and FCR, LLC,

    Plaintiffs,

v.

CITY OF ANN ARBOR,

    Defendant.
_____/

Case No. 2:16-cv-12771

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER GRANTING MOTION FOR PARTIAL DISMISSAL [10]
AND FINDING MOTION FOR EXTENSION OF TIME TO FILE ANSWER [11] MOOT**

Plaintiffs Resource Recovery Systems, LLC ("RRS") and FCR, LLC (collectively, "ReCommunity") sued the City of Ann Arbor for alleged violations of Michigan law that arose from the parties' contractual relationship. Before the Court are the City's motions for partial dismissal, and for an extension of time and stay of discovery. The Court has reviewed the briefs, and finds that a hearing is not necessary. *See* E.D. Mich. LR 7.1(f).

**BACKGROUND[1]**

From 1993 to 2016, ReCommunity operated a City-owned materials recycling facility and transfer station (the "Plant") pursuant to a recurrently amended Operating and Management Contract (the "Contract") between the City and RRS. The most recent amendment extended the Contract through 2021. ECF 1, ¶ 14. At some point, the City encouraged ReCommunity to enter into materials-recycling contracts with public and private third parties, and the Contract was amended to include a revenue-sharing agreement. Pursuant to the agreement, revenue sharing was "triggered" when net revenue

---

[1] The recitation of the complaint's allegations is a summary, and does not constitute a finding of fact.

was higher than $54.00 per ton, and the City would receive a certain percentage of recycled tons from the City and third parties. When the net revenue fell below the trigger price, however, the difference in revenue would be added to the amount the City owed ReCommunity. The City also promised to take responsibility for the costs borne by ReCommunity for transporting those materials to the Plant. For example, the City approved the purchase of a new baler to reliably compact recyclables for transport. ReCommunity purchased one for $550,000 and the City confirmed that it would cover the entire cost.

The parties profited handsomely from the third-party contracts until failing commodity prices dropped per-ton revenues below the trigger price and "shift[ed] the historical flow of payments (from ReCommunity to the City) in the opposite direction." *Id.* ¶ 27. ReCommunity claims that the City owes it $183,566.33 as a result of the reversal, and—despite ReCommunity's offers to amend the Contract—the City has yet to pay.

As commodity prices continued to fall, the parties' relationship deteriorated, and various disputes precipitated back-and-forth communications. *Id.* ¶¶ 41–70. On July 7, 2016, the City sent ReCommunity a letter purporting to terminate the Contract, and eventually "barred ReCommunity from entering the Plant and providing its recycling services to the City." *Id.* ¶¶ 71, 81. On July 19, 2016, ReCommunity sent the City a letter terminating the Contract.

The instant complaint alleges state-law claims of breach of contract (Count I and II), promissory estoppel (Count III), and unjust enrichment (Count IV).

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint that fails to state a claim upon which relief can be granted. The Court may grant a Rule 12(b)(6)

2

motion to dismiss only if the allegations do not sufficiently "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). In evaluating the motion, the Court presumes the truth of all well-pled factual assertions. *Bishop v. Lucent Techs.*, 520 F.3d 516, 519 (6th Cir. 2008). Moreover, the Court must draw every reasonable inference in favor of the nonmoving party. *Dubay v. Wells*, 506 F.3d 422, 427 (6th Cir. 2007). But a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the element of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

## DISCUSSION

The City argues that ReCommunity's promissory estoppel and unjust enrichment claims should be dismissed because the Contract governed the parties' relationship, and the claims are barred by Michigan's Governmental Tort Liability Act ("GTLA").

"The courts of Michigan will imply a contract when a plaintiff can establish that no express contract concerning the subject matter exists and that the defendant has received a benefit from the plaintiff and retained it, resulting in an inequity." *Solo v. United Parcel Serv. Co.*, 819 F.3d 788, 796 (6th Cir. 2016) (citations omitted). "A plaintiff can only plead breach of contract and implied contract claims in the alternative if there is doubt as to the existence of a contract." *Llewellyn-Jones v. Metro Prop. Grp., LLC*, 22 F. Supp. 3d 760, 794 (E.D. Mich. 2014). "If the parties admit that a contract exists, but dispute its terms or effect, an action will not also lie for quantum meruit or implied contract. In other words, alternative pleading of an implied contract claim is only allowed in a contract setting where a party doubts the existence of a contract." *Id.* (citations omitted).

Among other things, the City states that the Contract "is a part of the Complaint for all purposes" because ReCommunity incorporated it by reference, the "procedures and obligations of both [ReCommunity] and the City relative to third party tonnages is [sic] explicitly spelled out in the [C]ontract," the Contract explicitly addresses the requirements for ReCommunity "to be able to enter into contracts with non-City customers who seek to bring [] recyclable materials" to the Plant for processing, and "it is undisputed that at all relevant times in the Complaint, the parties had an express and comprehensive contract governing their relationship with respect to all aspects of the operation and management" of the Plant. ECF 10, PgID 52–57.

ReCommunity argues that it pleaded its claims in the alternative under Rule 8 to preserve its rights "in the event [the City] argued once again that the contract's relevant provisions were not binding and enforceable." ECF 12, PgID 282–83. The point is well-taken. While the City's assertions regarding the non-binding or unenforceable nature of the Contract may be true, it would be premature for the Court to dismiss ReCommunity's unjust enrichment and promissory estoppel claims now, on that basis. The City moved for partial dismissal of the complaint, and has yet to file an answer, which is to say it has yet to formally acknowledge the existence and force of the Contract. ReCommunity's alternative pleading anticipates the possibility that the City will deny that an enforceable contract governs.

Even if the City admits to the existence and force of the Contract in its answer, "[t]he course of litigation . . . is never certain, and there is no guarantee that" the City will not attempt to repudiate its concession at a later date. *Son v. Coal Equity, Inc.*, 122 F. App'x 797, 802 (6th Cir. 2004). By allowing alternative or hypothetical claims to proceed at this

4

early point in litigation, the Court recognizes ReCommunity's right to "state as many separate claims or defense as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3).

In its reply brief, the City appears to concede the point. ECF 14, PgID 306. Nevertheless, the City claims its second argument mandates dismissal—namely, that ReCommunity failed to plead its claims in such a way as to meet "the very narrow 'proprietary function' exception" to the City's "broad grant of immunity" under the GTLA. *Id.*

Subject to few exceptions, the GTLA protects a governmental agency from tort liability so long as the agency "is engaged in the exercise or discharge of a governmental function." Mich. Comp. Laws § 691.1407, *et seq.* The immunity is broad, "and the statutory exceptions thereto are to be narrowly construed." *Yono v. Dep't of Transp.*, 499 Mich. 636, 648 (2016) (quotation omitted).

The "proprietary function exception" applies when a party seeks to "recover for bodily injury or property damage arising out of the performance of a proprietary function." Mich. Comp. Laws § 691.1413. When analyzing the exception, Michigan courts have defined "property damage" as "injury or harm to one's rights or interests associated with an object," and a "proprietary function" as "any activity which is conducted primarily for the purpose of producing a pecuniary profit for the governmental agency" so long as the activity is not "normally supported by taxes or fees." *Laurence G. Wolf Capital Mgmt. Tr. Agreement v. City of Ferndale*, 269 Mich. App. 265, 270–71 (Mich. Ct. App. 2005).

An agency's generation of profit is not dispositive as to its purpose, but the existence, place of deposit, and use of that profit are all relevant to its intent. *Goodhue v. Dep't of Transp.*, No. 332467, 2017 WL 2131518, at *2 (Mich. Ct. App. May 16, 2017) (quotation omitted). An agency's continued pursuit of a consistently unprofitable activity, for example,

5

"may be evidence that the primary purpose is not to make a pecuniary profit." *Coleman v. Kootsillas*, 456 Mich. 615, 621 (1998) (quotation omitted).

The instant question before the Court is: Taking ReCommunity's well-pled factual assertions as true, does the "proprietary function exception"—construed narrowly—subject the City to liability for ReCommunity's promissory estoppel and unjust enrichment claims? To answer "yes", the following questions must be answered in the affirmative:

(1) Did ReCommunity suffer "property damage" under the GTLA?[2]

(2) Did the property damage arise from the City's generation of profit?

(3) Did the City's place of deposit and use of that profit demonstrate that it conducted the activities primarily to produce a pecuniary profit?

(4) Were the activities not "normally supported by taxes or fees"?

*See Coleman*, 456 Mich. at 621 (quoting Mich. Comp. Laws § 691.1413).

ReCommunity claims the City's engagement "falls squarely within the proprietary function exception," because it suffered "property damage" in the form of lost profits, the City "made nearly $2 million from ReCommunity's sale of third party recyclable materials collected outside of the city's domain," and the City demonstrated that it "did not use its profits to support" the Plant by "refus[ing] to timely pay for necessary equipment." ECF 12, PgID 278–80; *see* ECF 1, ¶¶ 16–29. According to the City, ReCommunity's promissory estoppel and unjust enrichment claims fail because ReCommunity's action does not seek to recover for "property damage" within the meaning of the statute, and, alternatively, the primary purpose of the City's contract is not to raise profits. ECF 14, PgID 308–10. The Court need only address the first argument.

---

[2] It is undisputed that ReCommunity does not seek recovery for bodily injury.

ReCommunity cites *Laurence G. Wolf Capital Mgmt. Tr. Agreement v. City of Ferndale* for the proposition that lost profits constitute "property damage" under the statute. ECF 12, PgID 280. In *Laurence*, the plaintiffs were property owners who sued a city and several of its employees for tortiously interfering with their business relationship with AT&T, which was considering building a cell tower on plaintiffs' roof. 269 Mich. App. at 266. After the city implemented a special-use permit ordinance, AT&T abandoned the negotiations and leased space on city-owned property instead. Did the city's attempt to gain a commercial advantage over plaintiffs (which caused them to lose business) constitute "property damage" necessary to trigger the proprietary function exception? After discussing and defining the terms "property" and "damage," the Michigan Court of Appeals held that it did. "Property," it reasoned, "refers to the various incorporeal ownership rights in a res, such as the right to possess, to enjoy the income from, to alienate, or to recover ownership from one who has improperly obtained title to the res." *Id.* at 271. And "damage" is "injury or harm that reduces value, usefulness, etc." *Id.* The plaintiffs sufficiently alleged "property damage" by claiming "harm to their right of lawful and unrestricted use of their res, as well as harm to their right to enjoy income derived from their res"—the lost income was "relevant for the purpose of attempting to measure the resulting damages." *Id.* at 272–73.

A complete reading of *Laurence* does not support ReCommunity's assertion that its lost profits constituted "property damage" under the statute. The promissory estoppel and unjust enrichment claims at issue here are fundamentally different than the tortious interference claims in *Laurence*. In *Laurence*, the plaintiffs owned the property at issue, and claimed that the city's tortious interference with that property damaged their right to use it in a particular fashion. But ReCommunity admits that "[p]ursuant to the Contract, [the City]

7

owned the Plant and all of its equipment," while ReCommunity operated the Plant, "arranged for general maintenance and repairs," and received reimbursement from the City when the funds were available. ECF 1, ¶¶ 16–17. The alleged breach of that Contract is squarely addressed in Counts I and II, which are not challenged presently.

Whether explicitly or implicitly, the damaged "interests" cited in ReCommunity's complaint are primarily economic in nature, and only tangentially related to ownership of the Plant and the baler. *See* ECF 1, ¶¶ 108 ("ReCommunity relied on Ann Arbor's promises that ReCommunity could process the recycling for third parties at the Plant."); 110 ("[T]he parties reached an agreement . . . regarding the purchase and installation of a new baler, which ReCommunity purchased for $550,000 in reliance on [the City]'s promises that ReCommunity would continue to operate the baler at the Plant."); 113 ("[The City] has reduced ReCommnuity's economic interests and taken those interests for itself by failing to pay the amounts owed to ReCommunity and preventing ReCommunity from complying with its third-party contracts."); 115 ("[The City]'s retention of this wrongfully-obtained financial benefit is inequitable."). The essence of the "property damage" in *Laurence* was the harm to plaintiffs' "right of lawful and unrestricted use of their res, as well as harm to their right to enjoy income derived from their res"—the income lost as a consequence of that harm was primarily used to measure damages.

But here, as the City points out, "there is no res"—ReCommunity failed to identify tangible property of theirs that was damaged as a result of the City's actions. Instead, it alleges that by failing to pay amounts owed and breaching promises upon which ReCommunity relied, the City "reduced ReCommunity's economic interests" and prevented ReCommunity from processing third-party materials using a City-owned baler inside the

8

City-owned Plant. Ultimately, it is the Court's duty to narrowly construe the proprietary function exception, *Yono*, 499 Mich. at 648, not "place governmental agencies on an equal footing with private tortfeasors." *Laurence*, 269 Mich. App. at 273. Accordingly, the City's motion is granted.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that Defendant's Motion for Partial Dismissal [10] is **GRANTED** and Defendant's Motion to Extend Time for Filing an Answer and to Stay Discovery [11] is **MOOT**.

**IT IS FURTHER ORDERED** that Defendant shall file an Answer within **14 days** of this order. *See* Fed. R. Civ. P. 12(a)(4).

**SO ORDERED**.

        s/Stephen J. Murphy, III
        STEPHEN J. MURPHY, III
        United States District Judge

Dated: August 31, 2017

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on August 31, 2017, by electronic and/or ordinary mail.

        s/David P. Parker
        Case Manager